**Dmitro Zelinski, Appellee, v. Chicago and North Western Railway Company, Appellant.**

**Gen. No. 44,421.**

50

Opinion filed December 13, 1948.   Released for publication December 27, 1948.

LOWELL HASTINGS, DRENNAN J. SLATER and WILLIAM A. REDMOND, all of Chicago, for appellant.

HARRY S. POSNER and LEO S. KARLIN, both of Chicago, for appellee; LEO S. KARLIN, of Chicago, of counsel.

MR. PRESIDING JUSTICE FEINBERG delivered the opinion of the court.

Plaintiff brought this action under the Federal Employers' Liability Act to recover damages for personal injuries. Upon a trial with a jury there was a verdict for $30,000 in favor of plaintiff, upon which judgment was entered, and defendant appeals. That plaintiff's

claim comes within the Federal Employers' Liability Act is not disputed.

Plaintiff, with fellow employees in a crew employed by defendant, was engaged in the repair of a freight car in defendant's railroad yard. There was a foreman in charge of the crew, consisting of plaintiff and two others. The tracks in the yard ran in an easterly and westerly direction. The freight car in question was a little west of a repair pit, which ran north and south. The customary handling of the repair of a freight car, like the one in question, would be to spot the car over the pit, in which was a mechanical jack, mounted on a narrow track running the length of the pit. The pit jack could be moved to a place under any of the tracks. The use of the pit would also facilitate the repair work required.

On the day in question, the crew was assigned to remove a broken U hanger from the freight car in question. The foreman, instead of spotting the car over the repair pit, decided that the hanger could be removed without the use of the pit. It became necessary to jack up the east end of the freight car and also the truck frame at that end, and the jacking up at the east end of the car was done without the use of the pit. After the body of the car had been raised by two air jacks, the truck frame was raised by screw jacks. It was necessary to put the screw jacks on wooden blocks in order to raise the truck sides to a sufficient height. After the car had been jacked up as indicated, the crew endeavored to pull out the hanger. Their efforts were unavailing, and another employee was summoned to cut the hanger with an acetylene torch. It appears that after burning through the hanger, the crew was unable to remove it. The foreman then decided to respot the car over the pit in order to afford more room to carry on the work of the removal of the hanger.

Plaintiff testified that before proceeding to respot the car, the foreman directed him to loosen cer-

tain bolts attached to the U hanger; that in order to carry out the direction of the foreman, he put his left hand on the cross bolt, where there was 6 to 8 inches of space between the oil box and the truck frame; that at that time the screw jack, which originally had been placed there by the foreman, was under the frame of the truck; that while he was trying to unfasten the bolt, the truck frame fell on his arm; that after he took his arm out from between the truck frame and oil box, he saw the side air jacks holding up the wheels but the screw jack, which had been holding up the truck frame, was no longer there; that he did not know who removed the screw jack or how it happened to give way from its position.

Defendant's witnesses testified they did not know what caused the screw jack to fall or who removed it. Defendant has not pointed out to us any testimony in the record, that it was the plaintiff who placed the screw jack that either was removed, or slipped away, or was carelessly placed in position in the first instance. Whether the plaintiff was correct in his testimony that the foreman placed the screw jack in the position that held up the truck frame; whether it was negligently placed, which caused it to slip from its position; or whether some other member of the crew removed it, were all matters within the province of the jury to pass upon. There is no claim made here by the defendant, that the verdict of the jury is against the manifest weight of the evidence. The only errors relied upon for reversal are the giving of certain instructions for the plaintiff, the refusal to give certain instructions for defendant, and the excessiveness of the verdict.

Instruction No. 4, given for the plaintiff, reads: "The Court instructs the jury that one method of impeaching a witness is by showing that he has made statements out of court at variance with statements on the witness stand, and if the jury believe from the evidence that any witness in this case has made state-

ments at any other time or place at variance with his evidence in this case, you have the right to take such fact into consideration in determining the weight to be given to the evidence of such witness." It is complained that the instruction should have limited the variance to "a point material to the issues." Defendant cites *Perkins v. Knisely,* 204 Ill. 275; *People v. Pfanschmidt,* 262 Ill. 411, and *People v. Decker,* 310 Ill. 234, in support of its contention. In none of the cases cited by defendant was this particular instruction involved or held to be reversible error. In the *Perkins* case the instruction considered had to do with witnesses testifying falsely to any material matter in issue and was held to be erroneous because it omitted the element of "knowingly" testifying falsely. *People v. Pfanschmidt* had to do with the question of the competency of the impeaching evidence admitted, and the claim made there that it was inadmissible because not material to the issue. *People v. Decker* likewise had to do with the cross-examination of a witness for the purpose of impeaching him, and the contention there made that the questions asked were not material to the issue. Nearly all of the cases, where the contention here made was raised and considered, had to do with the type of instruction involving wilful false swearing by a witness, which is required to be limited to matter "materal to the issue." We think the giving of this instruction is not reversible error. We have examined the other instructions complained of, given for plaintiff, and find no merit in the attack made upon them.

Complaint is made by defendant of the court's refusal to give defendant's instruction No. 5, which reads: "You are further charged that unless there has been shown by a preponderance of proof leading reasonably to the conclusion that plaintiff's injuries are certain to be permanent, you must not assess damages for plaintiff's injuries as or for permanent injuries." We think the subject was sufficiently cov-

ered and the jury properly instructed in plaintiff's given instruction No. 2, which must be read together with defendant's given instruction No. 13, which cautioned the jury that the burden is upon the plaintiff as to each and every one of the claimed injuries or disabilities to prove by a preponderance or a greater weight of the evidence in this case, not only that such alleged injuries or disabilities really exist or have existed, but that such alleged injuries or disabilities are the result of the accident in question, and unless so proven, he cannot recover for such alleged injuries or disabilities. The alleged injuries or disabilities in the complaint included future pain and suffering and permanent injury as a direct result of the accident.

We agree with defendant in its position that, where there is a sharp conflict in the evidence or a close question of liability it is important and necessary that the jury be accurately instructed. We do not regard the state of the evidence as presenting a sharp conflict or a close question of liability. Our consideration of the evidence convinces us not only that the verdict and the judgment are not against the manifest weight of the evidence but are amply supported by the evidence. In view of what we have said as to the state of the record, we do not regard the refusal of the court to give defendant's instruction No. 1 as reversible error. There is some dispute presented here as to whether this instruction is properly certified in the transcript of proceedings. Treating it as properly a part of the record, we nevertheless consider the failure to give the instruction was not prejudicial to defendant and should not work a reversal of this judgment.

There is no dispute in the record that plaintiff's average earnings in the employ of defendant were approximately $230 a month. The medical testimony discloses that plaintiff sustained a fracture of the radius in the lower third of the right arm and a

fracture of the index finger. The effort to maintain the fractured ends in position was not successful after a cast had been applied. It became necessary to operate, and a metal plate was inserted, attached to the fragments with seven screws. The metal plate will remain permanently. From the time of the accident, March 1, 1945, until September 1945, he remained under the constant care of his doctor, and at the last examination there was limitation of flexion of the fingers and wrist present. It is undisputed that plaintiff will not be able to perform his former labor with the railroad. The opinion expressed by the medical director employed by the defendant was, that while he found the limitation of flexion of the fingers and wrist, he thought the plaintiff was able to return to some type of light work, involving the use of his hands. Plaintiff testified that at the time of the trial, September 18, 1947, he felt pain in the hand and in his arm; that he could not turn his hand and could not get a grip; and that he could hold nothing in his hand of any weight. Upon the question of the excessiveness of the verdict, we need only to call attention to what we said in *Ford v. Friel,* 330 Ill. App. 136, and cases there cited. We do not regard this verdict as excessive.

The defendant has had a fair trial. The judgment of the superior court is correct, and it is accordingly affirmed.

*Affirmed.*

TUOHY and NIEMEYER, JJ., concur.